IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| DAVID B. LORENZ, also known as DNT Trucking Inc., also known as DNT Transportation Inc., also known as DNT Trucking/84 Lumber, | ) ) ) ) | Civil Case No. 08-443-KI |
| | ) | OPINION AND ORDER |
| Appellant, | ) ) | |
| vs. | ) ) | |
| UNITED STATES TRUSTEE, Robert D. Miller Jr., Acting United States Trustee, | ) ) ) | |
| Appellee. | ) ) | |

        Bret A. Knewtson
        3000 N. W. Stucki Place, Suite 230 M
        Hillsboro, Oregon 97124

            Attorney for Appellant

        Pamela J. Griffith
        620 S. W. Main Street, Room 213
        Portland, Oregon 97204

            Attorney for Appellee

Page 1 - OPINION AND ORDER

KING, Judge:

Appellant, and debtor, David B. Lorenz appeals the bankruptcy court's order denying attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. For the following reasons, I affirm the bankruptcy court's order.

## BACKGROUND

Lorenz petitioned for Chapter 7 bankruptcy on February 26, 2007. Although he is married, his wife did not file with him. Lorenz chose bankruptcy because his trucking business had failed in 2006, he was indebted between $500,000 and a million dollars due in part to his business, and he was unemployed.[1] Lorenz and his wife live in a 3,685 square foot home on 14 acres of property, which they bought in February of 2006 for $800,000. He also owes money on two 2006 Chevrolet Silverado 3500s, a 2005 Chevy Silverado 3500 flatbed pickup, a horse trailer with a live-in compartment, and a 2004 John Deere tractor.

Subsequent to filing his petition for bankruptcy, Lorenz began working for his wife earning $40,000 a year, and then for his brother, earning $52,000 a year.

Lorenz intended to live in the home, keep his horse, the two 2006 Chevy Silverados, the quad, and the John Deere tractor. His wife intended to keep her 9 horses.

The United States Trustee ("UST") moved to dismiss the petition for "abuse" under 11 U.S.C. § 707(b)(3). In finding whether "abuse" exists, the bankruptcy court considers "(A) whether the debtor filed the petition in bad faith; or (B) [whether] the totality of the circumstances . . . of the debtor's situation demonstrates abuse." 11 U.S.C. § 707(b)(3).

---

[1]Lorenz filed a consumer bankruptcy case because the $800,000 mortgage outweighed his liquidated unsecured business debts.

Page 2 - OPINION AND ORDER

The UST argued that Lorenz was not the kind of debtor to whom Congress intended to give bankruptcy protection. It highlighted Lorenz's extravagant lifestyle. It referred to the IRS Financial Collection Standards ("IRS Standards"), and argued that if Lorenz's expenses were limited to the IRS Standards, he would have more than $596 a month to pay creditors. The UST also argued that if both Lorenz and his wife limited their living expenses to the IRS Standards, they would have more than $2,656 per month to pay creditors.

The bankruptcy court denied the UST's motion to dismiss, after holding an evidentiary hearing. The bankruptcy court declined to use the IRS Standards in determining whether to dismiss Lorenz's petition. Instead, the court calculated reasonable expenses by evaluating the mortgage payments and taxes on a median-priced home in the Portland area. The court concluded that Lorenz did not have the necessary income to make payments to creditors, even considering only his reasonable expenses rather than his actual expenses.

Lorenz applied for attorney fees under EAJA. The bankruptcy court denied the application, without a hearing, stating,

> Although the court denied the UST's motion to dismiss, the position taken by the UST was substantially justified. This debtor had an $800,000 house, at least four vehicles on which he owed substantial amounts, and a wife who contributes a substantial amount to the household but who did not join in the bankruptcy petition. Although the court ultimately decided that, even given reasonable expenses, this debtor could not afford to make a meaningful payment to creditors, the UST was justified in challenging this debtor's use of the bankruptcy system, given the lifestyle he leads. This debtor is living beyond his means, and even with a bankruptcy discharge, will have to curtail his living expenses in order to maintain a reasonable standard of living in the future. However, even if debtor were incurring only reasonable living expenses, his creditors would still not see any meaningful payment on their debts.

Appellant's Excerpt of Record ("Appellant's ER") at 4-5.

Page 3 - OPINION AND ORDER

**LEGAL STANDARDS**

The Court reviews the bankruptcy court's order denying EAJA fees under an abuse of discretion standard of review.  Pierce v. Underwood, 487 U.S. 552, 562-63 (1988).  An abuse of discretion will be found if the bankruptcy court "based its decision on an erroneous legal conclusion or a clearly erroneous finding of fact."  Oregon Envtl. Council v. Kunzman, 817 F.2d 484, 496 (9th Cir. 1987).

The Equal Access to Justice Act ("EAJA") provides that the court shall award attorney fees and expenses to a prevailing party in any civil action brought by or against the United States unless the court finds that the government's position was substantially justified or that special circumstances make an award unjust.  28 U.S.C. § 2412(d)(1)(A).

The test for determining whether the government was substantially justified is whether its position had a reasonable basis both in law and fact, or was "justified in substance or in the main."  Pierce, 487 U.S. at 565.  The burden is on the government to prove substantial justification.  Flores v. Shalala, 49 F.3d 562, 569-70 (9th Cir. 1995).

**DISCUSSION**

Lorenz argues that the bankruptcy court erred in finding the UST's motion to dismiss to be substantially justified.  Lorenz concedes that the UST's motion may have been warranted initially because his financial situation was not clear.  Once he obtained a job and began earning money, however, Lorenz argues the UST should have withdrawn its motion.  According to Lorenz, it was apparent at that point that Lorenz was unable to repay his creditors even if his expenses were reduced to a more typical amount.  Specifically, Lorenz argues the UST was wrong to take the position that the bankruptcy court should evaluate the reasonableness of

Lorenz's expenses by referring to the IRS Standards. Lorenz also argues the UST was wrong to argue Lorenz's wife should contribute her income to pay Lorenz's debts. In short, Lorenz argues there was no evidence of abuse warranting dismissal of his case, rendering the UST's motion to dismiss unjustified.

I affirm the bankruptcy court's order denying Lorenz's application for EAJA fees. The UST's suggestion to consider the IRS Standards in evaluating Lorenz's expenses was reasonable. I disagree with Lorenz that the UST argued the IRS Standards were the sole standard the court could consider. The transcript of the hearing reflects that the UST argued, "We used the IRS standards. They are standards that are out there that form some objective analysis that can be applied across the board to debtors. We are not saying that the Court has to use those standards. We're saying that it's some evidence of reasonableness." Appellant's ER at 65. Similarly, in its trial brief it presented the argument as follows: "As a matter of perspective, the IRS standards for mortgage or rent expenses for a family of four was $1,124 when the Debtor filed his bankruptcy case. The Debtor's expenses were $5,756, more than 500% above the standard." UST's Excerpt of Record at 102.

Lorenz points to no authority precluding the use of IRS Standards. Indeed, the provision at issue, 11 U.S.C. § 707(b)(3), was amended as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"), and this provision did not become effective until October 17, 2005. Few decisions have interpreted the new § 707(b)(3).

Looking to cases interpreting the standard in place prior to BAPCPA–the "substantial abuse" standard– the standard required a fact-specific inquiry and how the bankruptcy court applied it was discretionary. As a general matter, under the "substantial abuse" standard, "a

Page 5 - OPINION AND ORDER

finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse." In re Kelly, 841 F.2d 908, 915 (9th Cir. 1988). In evaluating whether a debtor is able to pay his debts, the court explained,

> We have consistently held that § 707(b) does not include a bright line test for substantial abuse, but rather commits the question of what constitutes substantial abuse to the discretion of bankruptcy judges within the context of the Code. Congress chose neither to define "substantial abuse" in the 1984 Act nor to leave specific guidance in legislative history. Congress thus left a flexible standard enabling courts to address each petition on its own merit. That Congress granted courts the discretion to identify substantial abuse necessarily suggests it intended courts to have the discretion to answer the subsidiary question of whether particular expenses are reasonably necessary.

Hebbring v. U.S. Trustee, 463 F.3d 902, 907 (9th Cir. 2006) (internal citations and corrections omitted). The UST has pointed to at least two cases which used the IRS Standards as a benchmark in evaluating whether expenses were reasonable. In re Edighoffer, 375 B.R. 789, 796 (Bankr. N.D. Ohio 2007) (housing and utility costs higher than IRS Standards); In re Gonzalez, 378 B.R. 168, 175 (Bankr. N.D. Ohio 2007) (IRS Standards are "a pole for guidance").

Additionally, precedent supports the UST's argument that the court should consider Lorenz's non-filing spouse's ability to pay a portion of the living expenses in evaluating abuse. In re Falke, 284 B.R. 133, 139 (Bankr. D. Or. 2002) ("each party to a relationship, to the extent of his or her income, shares equally in paying the family living expenses"). In addition, the UST submitted an exhibit to demonstrate Lorenz had remaining income after expenses, without considering his wife's contribution.

Although the UST's arguments were not successful with the bankruptcy court, I cannot say the bankruptcy court abused its discretion in finding the UST's position had a reasonable basis both in law and fact.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's order is AFFIRMED, and this appeal is dismissed. Judgment will be entered.

IT IS SO ORDERED.

Dated this ____3rd_____ day of June, 2008.

                                              /s/ Garr M. King  
                                            Garr M. King  
                                            United States District Judge